UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )   Chapter 7
MICHELLE DAWN BALM              )
                                )   Bankruptcy No. 04-00576
      Debtor.                   )
_____         )
                                )
MICHELLE DAWN BALM              )
                                )   Adversary No. 04-9077
      Plaintiff,                )
                                )
vs.                             )
                                )
SALLIEMAE SERVICING CORP.       )
et al.                          )
                                )
      Defendants.               )
                                )
EDUCATIONAL CREDIT              )
MANAGEMENT CORP.                )
                                )
      Intervenor.               )

### ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY

     This matter came before the undersigned for trial on
October 27, 2005.  Debtor Michelle Balm was represented by
attorney Michael Dunbar.  Intervenor Educational Credit
Management Corp. was represented by attorney Chris Foy.  After
the presentation of evidence and argument, the Court took the
matter under advisement.  This is a core proceeding pursuant
to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

     Debtor seeks to discharge student loan debt under 11
U.S.C. § 523(a)(8) as imposing an undue hardship on her and
her dependents.  Educational Credit Management Corp. asserts
the debt is not dischargeable.

## FINDINGS OF FACT

Debtor Michelle Balm owes a student loan to Educational Credit of more than $30,000. Several loans originated while she was attending the University of Northern Iowa between 1985 and 2003. These loans were consolidated on January 9, 2004 with Salliemae Servicing Corp. and then purchased by Educational Credit. Debtor filed her Chapter 7 bankruptcy petition February 25, 2004.

Debtor's current income consists of Social Security disability payments she receives of $883 per month for herself and $441 per month for her 8 year old daughter. At the time of trial, Debtor was living at a women's shelter and trying to find a residence. Prior to staying at the shelter, Debtor and her daughter moved in with a friend and were not paying rent. After a few months, this arrangement did not work out. Before that, Debtor lived at a house owned by her mother and paid the mortgage and home equity loan payments as rent. She left that house when she was no longer able to make payments.

Debtor is 42 years old. After more than a dozen years trying to get a college degree at UNI, she has barely entered senior status. She has suffered from psychological problems since she was in high school. Debtor testified that her psychological problems have hampered her studies because she could not concentrate and would get overwhelmed and have bouts of anxiety and depression. She has been hospitalized for her depression over the years, beginning when she was a sophomore or junior in high school. Debtor has received Social Security disability payments for about 10 years.

Over the years, Debtor has had jobs in food service and data entry. Beginning in 2001, Debtor ran a licensed day care center at her residence, which was eventually a house purchased by her mother on Tremont Street in Cedar Falls. Between 2001 and 2003, Debtor grossed between $29,000 and $34,000 per year with the day care business. During that time, she had assistance from college students and from her parents. Debtor discontinued the business in 2004 or 2005. She testified that licensing requirements changed, making it too difficult for her to stay licensed. Because of the lack of a license, she learned that she could not be insured or continue to receive the assistance from the student workers. Also, Debtor had a back injury in late 2003 which she

2

testified prevented her from lifting and properly caring for children.

Besides psychological problems, depression and anxiety, Debtor has several physical problems. She has stenosis of the spine, degenerative bone disease in her back, bulging discs in her lower back, knee problems from her 2003 injury, fibromyalgia and chronic pain. She is currently taking eight different types of medication for pain, depression, anxiety, and sleep disturbances. Debtor testified that her life is greatly affected by her physical problems and medications. She does not believe she is employable. She is in constant pain and cannot sit or stand for long periods of time. She suffers extreme fatigue, has pain shooting down her legs and arms and does not sleep well. Her anxiety, depression and nervousness are exacerbated by stress. The student loan debt and other bills have been causing a lot of stress in her life. Prepetition, Debtor disconnected her phone because of calls from bill collectors.

Cross-examination of Debtor by Educational Credit focused on Debtor's former daycare business. Debtor testified that her mother made the down payment on the home on Tremont St. where she ran her business and the mortgage was in her mother's name. Debtor's mother also paid for repairs and updates on the home. The house is now for sale. Debtor testified that when day care licensing requirements changed, she could no longer get insurance or outside help to continue her business. Because of her physical limitations, Debtor was not comfortable continuing without outside help.

When she ran her business, she cared for up to six children at any one time and charged about $2.00 per hour per child. Although her business ran about 40 hours per week, she worked less than 40 hours and used staff and her parents' help. Her staff was paid between $6.00 and $8.00 per hour. Although Debtor considered continuing as an unlicensed business, she decided that she was not physically able to care for the children herself. She would have had to cut down on the number of children, would not have received state funds, and would not have been able to afford additional staff to help her. While she was licensed, her annual net income from the daycare business was $7,700 or less as reflected in her 2001 through 2003 tax returns. Debtor has not filed her 2004 tax return because the necessary information is on her laptop

3

computer which is inoperable now and she cannot afford to
repair it.

Debtor does not receive child support payments from her
daughter's father.  He teaches part-time at a community
college and does odd jobs.  Debtor testified that she has not
sought support payments for her daughter, although she has
looked into it recently in relation to getting Medicaid
coverage for her daughter.

Debtor's Exhibit 1 is a deposition of Dr. Marvin Piburn,
Debtor's psychiatrist.  He testified regarding Debtor's mental
health based on his treatment of her and her two-volume file
dating from 1991.  In summary, Dr. Piburn testified that
Debtor has major depression, associated anxiety, AD/HD,
inattentive type, and she was an abuse victim as an adult and
a child.  He also noted that Debtor has extensive physical
health problems which interfere with her life quality.  On a
Global Assessment of Functioning scale of 0 to 100, Debtor is
rated as 45, which is considered severe impairment.  Mr.
Piburn testified:  "That would indicate that her emotional and
physical health conditions would impair her to the degree that
her relationships would be influenced and her ability to go to
school or work competitively would be impaired."  Deposition,
p. 8, l. 12-17.

Dr. Piburn testified that he relied on information from
outside sources regarding Debtor's physical diagnoses.  He
stated that he needed to know about Debtor's physical
conditions because they influence Debtor's mental functioning.
Educational Credit objects to admission of several portions of
the deposition as evidence.  It argues that Dr. Piburn's
testimony regarding medical diagnoses is inadmissible as he is
not qualified as an expert regarding physical, as opposed to
psychiatric, ailments.  Debtor argues that Educational Credit
failed to make the objection during the deposition.  In
response to the objection, counsel for Debtor asserts he would
have asked if Dr. Piburn regularly relied on the diagnosis of
other medical professionals in treating his patients.

**EVIDENTIARY RULING**

It is a well-established principle that the testimony of
a qualified medical doctor cannot be excluded simply because
he is not a specialist in a particular school of medical
practice.  <u>Harris v. Smith</u>, 372 F.2d 806, 813-14 (8th Cir.

4

1967).  "A physician is not incompetent to testify as an
expert merely because he is not a specialist in the particular
field of which he speaks." Id. at 814.  Dr. Piburn has an
M.D. degree from the University of Iowa College of Medicine.
He is board certified in general psychiatry.  Although he is
not a specialist in the diagnosis or treatment of Debtor's
physical ailments, he is a qualified medical doctor and
competent to testify as an expert.  The weight to be given his
testimony is a question of discretion for the Court.  Id.
Educational Credit's objection to admission of portions of Dr.
Piburn's deposition testimony is overruled.

## ARGUMENTS OF THE PARTIES

Educational Credit argues that Debtor is capable of some
kind of work as evidenced by the income she produced in her
daycare business.  Debtor has produced no evidence regarding
future income or expenses.  Educational Credit argues the
timing of the consolidation of Debtor's student loans is
suspicious, occurring within six weeks of filing her
bankruptcy petition.  It asserts Debtor is not attempting to
maximize her income, as shown by her failure to pursue child
support from her daughter's father and the closing of her
daycare business.

Debtor argues that she cannot physically continue doing
day care.  While she ran the business, Debtor's net income was
insufficient for her to meet her needs and pay her debts.  She
asserts that her mental and physical conditions limit her
ability to earn income and excepting the student loan debt
from discharge will impose an undue hardship on her.

In his opening statement, counsel for Debtor asserted
default can be entered against the University of Northern Iowa
which was made a defendant by Debtor's Amended Complaint.  The
docket does not contain an answer by the University, but
neither does it contain proof of service of the Amended
Complaint or Summons on the University.  Debtor is directed to
follow the appropriate procedure to pursue entry of default
and default judgment against the University of Northern Iowa.

## CONCLUSIONS OF LAW

Student loan debts are not discharged in bankruptcy
"unless excepting such debt from discharge under this
paragraph will impose an undue hardship on the debtor and the

debtor's dependents."   11 U.S.C. § 523(a)(8).   Debtor must
prove the existence of undue hardship by a preponderance of
the evidence.   _In re Cheney_, 280 B.R. 648, 659 (N.D. Iowa
2002).

     "Undue hardship" requires examination of the totality of
circumstances.   _In re Reynolds_, 425 F.3d 526, 532 (8th Cir.
2005); _In re Long_, 322 F.3d 549, 553 (8th Cir. 2003)
(rejecting the _Brunner_ test as too restrictive and reaffirming
the _Andrews_ test); _In re Andrews_, 661 F.2d 702 (8th Cir.
1981).   The 8th Circuit held in _Long_:

          In evaluating the totality-of-the-circumstances, our
          bankruptcy . . . courts should consider: (1) the
          debtor's past, present, and reasonably reliable
          future financial resources; (2) a calculation of the
          debtor's and her dependent's reasonable necessary
          living expenses; and (3) any other relevant facts
          and circumstances surrounding each particular
          bankruptcy case.   Simply put, if the debtor's
          reasonable future financial resources will
          sufficiently cover payment of the student loan debt-
          -while still allowing for a minimal standard of
          living--then the debt should not be discharged.
          Certainly, this determination will require a special
          consideration of the debtor's present employment and
          financial situation--including assets, expenses, and
          earnings--along with the prospect of future changes-
          -positive or adverse--in the debtor's financial
          position.

_Long_, 322 F.3d at 554 (citations omitted).

     Debtor's total living expenses should not exceed what is
reasonable and necessary.   _In re Long_, 292 B.R. 635, 638
(B.A.P. 8th Cir. 2003) (on remand from 8th Circuit).   To be
reasonable and necessary, expenses must be modest and
commensurate with the debtor's resources.   _In re Meling_, 263
B.R. 275, 279 (Bankr. N.D. Iowa 2001), _aff'd_, 2002 WL 32107248
(N.D. Iowa 2002).   Other relevant factors and circumstances of
each individual bankruptcy case may include: (1) the debtor's
good faith effort to repay the loan, or a debtor's bad faith
in non-repayment, (2) whether the debtor has made a good faith
effort to obtain employment, maximize income, and minimize
expenses, and (3) whether the debtor is suffering truly
severe, even uniquely difficult financial circumstances, not

6

merely severe financial difficulty.  Faktor v. United States,
306 B.R. 256, 264 (Bankr. N.D. Iowa 2004); In re Wilson, 270
B.R. 290, 294 (Bankr. N.D. Iowa 2001).

It is appropriate to consider a debtor's disease or
disability as a factor in the determination of undue hardship
because it may effect an individual's ability to work.
Reynolds, 425 F.3d at 533;  In re Ford, 269 B.R. 673, 675
(B.A.P. 8th Cir. 2001).  Long-term physical infirmities may
prevent the debtor from securing or sustaining gainful
employment.  Meling, 263 B.R.at 279.  Stressors arising
because of the debt itself may be considered with the
recurring nature of an illness and the impact on not only the
debtor's future health, but the debtor's financial situation.
Reynolds, 425 F.3d at 533.

In Reynolds, the court noted the debtor's diagnosis of
major depressive disorder and fragile mental health when
affirming the discharge of student loan debt.  Id.  In Cheney,
the court affirmed the discharge of student loan debt where
there was evidence of persistent mental problems, including
problems with stress, depression and anxiety.  280 B.R. at
662.  It declined to second-guess the debtor's failure to seek
increased child support.  Id. at 663.  In In re Ratzsch, 325
B.R. 812, 816 (Bankr. N.D. Iowa 2005), the court allowed
student loan debt to be discharged where the debtor had
received disability benefits for more than 10 years, health
problems from obesity were likely to continue and the debtor
had a subsistence level of income and maintained a minimal
standard of living.  In In re Anelli, 262 B.R. 1, 9 (Bankr. D.
Mass. 2000), the court found a debtor unable to generate
income given numerous medical ailments including chronic
fatigue syndrome, arthritis, fibromyalgia and depression.

### ANALYSIS

Debtor currently has monthly income from disability
payments of $883.  She also receives her daughter's disability
payments of $441 per month.  Although Debtor had a modest
income from providing daycare in the past, it is not
foreseeable that she will be able to resume this business in
the future due to changes in Debtor's physical capabilities,
her lack of a place to provide daycare, and changes in the law
governing daycare operations.  The Court will not consider any
potential child support income for Debtor's daughter as a
future financial resource as it is speculative and is arguably

available for Debtor's daughter's needs, not for student loan
payments.

There is little evidence in the record regarding Debtor's
current living expenses. Debtor's Schedule J, filed with her
bankruptcy petition on February 25, 2004, is arguably out of
date. The Court can assume that when Debtor finds a place to
live, her living expenses will be modest, based on her minimal
level of income.

From the record presented, the Court finds that this case
is one wherein Debtor is suffering truly severe and uniquely
difficult financial circumstances. Debtor has been receiving
Social Security disability payments for more than 10 years.
She has attempted to work and to run her own daycare business,
but has not succeeded. Debtor's physical and psychological
problems have prevented her from finishing her education and
from maintaining even a modest level of income. Sufficient
evidence has been presented for the Court to find that
Debtor's medical problems will continue to impair her ability
to work and generate income for herself and her daughter. The
Court must conclude that excepting the student loan debt of
more than $30,000 from discharge would impose undue hardship
on Debtor given her earning capacity.

**WHEREFORE**, the student loan debt owed to Educational
Credit Management Corp. is discharged due to undue hardship
under § 523(a)(8).

**FURTHER**, the addition of the University of Northern Iowa
as a defendant in Debtor's Amended Complaint remains
unresolved as there is no proof of service of the complaint or
summons on file and Debtor has not requested entry of default
or default judgment against the University. Debtor is
directed to file an appropriate motion to finalize this
adversary proceeding on or before November 30, 2005.

DATED AND ENTERED:

November 14, 2005.


PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE